# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| ADVENTURE OUTDOORS, INC., | : | |
| a Georgia Corporation, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 1:06-CV-2897-JOF |
| | : | |
| MICHAEL BLOOMBERG, | : | |
| Mayor of the City of New York, in his | : | |
| capacity as Mayor of New York City, | : | |
| and individually, et al., | : | |
| | : | |
| Defendants. | : | |

## OPINION AND ORDER

Until further notice, the court DIRECTS the Clerk of the Court to SEAL the court's order of September 20, 2007.  In lieu thereof, the Clerk of the Court is DIRECTED to file the attached redacted version of the order.  The Clerk of the Court is FURTHER DIRECTED to SEAL Exhibits 5 through 10 filed in conjunction with Plaintiffs' response to Defendants' Motion to Dismiss, Docket Entry 12.

**IT IS SO ORDERED** this 21st day of September 2007.


        s/ J. Owen Forrester        
        J. OWEN FORRESTER
        SENIOR UNITED STATES DISTRICT JUDGE

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

ADVENTURE OUTDOORS, INC.,     :
a Georgia Corporation, et al.,     :
     :
      Plaintiffs,     :
     :     CIVIL ACTION NO.
      v.     :     1:06-CV-2897-JOF
     :
MICHAEL BLOOMBERG,     :
Mayor of the City of New York, in his     :
capacity as Mayor of New York City,     :
and individually, et al.,     :
     :
      Defendants.     :

## REDACTED
## OPINION AND ORDER

This matter is before the court on Plaintiffs' motion to remand [3-1]; Defendants'

motion for leave to file excess pages [6-1]; Defendants' motion to dismiss [7-1] or in the

alternative to transfer case to the United States District Court for the Eastern District of New

York [7-2]; Plaintiffs' renewed motion to remand [13-1]; Plaintiffs' motion to amend

complaint [14-1]; and Plaintiffs' motion to amend complaint [18-1].

# I.     Procedural History

## A.     Background

On May 15, 2006, The City of New York filed suit in the United States District Court for the Eastern District of New York against numerous gun brokers around the country, including Adventure Outdoors, Inc., located in Smyrna, Georgia. The City contends that the gun brokers knowingly permitted straw transactions to take place during gun purchases, a practice which violates federal law. In compiling evidence to file its complaint, the City hired numerous private investigators to pose as gun purchasers and go to various gun dealers around the country. The investigators would engage in behavior designed to simulate straw purchases to determine whether the gun broker would permit a sale under circumstances which purportedly mimic a straw purchase. Several gun brokers, including Adventure Outdoors, sold guns to the investigators hired by the City. The City alleges the gun dealer's actions in these purchases constitute various forms of nuisance and negligence. The court will refer to this lawsuit as the "New York Action."

Adventure Outdoors and its owners Jay, Cecilia, and Eric Wallace, then filed suit in the Superior Court of Cobb County contending that various officials of New York City defamed them in a news conference called to announce the filing of the New York Action. Adventure Outdoors also claims that the City's use of private investigators to simulate straw purchases was negligent. Defendants to Adventure Outdoors' complaint removed the suit

3

to this court, and Adventure Outdoors filed the instant motion to remand. To sort through the jurisdictional issues raised in the parties' briefings, the court finds it necessary to review in detail the opposing suits filed by the parties.

### B.    The New York Action

In the New York Action, the City alleges that from March 1994 through October 2001, at least 21 guns sold by Adventure Outdoors were recovered in New York City in the hands of individuals prohibited from possessing a gun and involved in violent crimes. *See* New York Complaint, ¶ 6. The complaint further avers that from 1996 to 2000, a total of 254 guns sold by Adventure Outdoors were recovered in connection with crimes around the country. *Id.* The City contends that the guns sold by the defendants

> are recovered in the hands of prohibited persons in disproportionate numbers because each Defendant sells handguns in a manner that either intentionally violates federal law or is contrary to industry practice or otherwise and therefore negligent. Specifically, upon information and belief, Defendants intentionally or negligently sell handguns to prohibited persons through "strawman" purchases, in which an individually legally able to buy a handgun purchases the gun from a licensed gun dealer, intending to transfer it immediately to a prohibited person.

*Id.*, ¶ 21.

With respect to Adventure Outdoors, the complaint states that on April 8, 2006, a male and female investigator retained by the City of New York went to the store and engaged in a "simulated straw purchase that displayed all of the observable, in-store

4

characteristics of the straw purchases described above [], without any subsequent transfer of the gun to the 'straw purchaser.'" *Id.*, ¶ 91.

> Only the male investigator interacted with an Adventure Outdoors sales person in discussing and selecting a Glock 9mm handgun to purchase. Once the male investigator had the gun and indicated a desire to purchase it, the female investigator, who had not been a part of the discussion, was summoned to the counter to make the purchase.

*Id.* The female investigator filled out the paperwork. *Id.*, ¶ 92. "When the male investigator attempted to pay for the gun, the salesperson said that the male investigator needed to initial the form because he was paying for the gun. The male investigator initialed the form, the salesperson performed the background check, and the transaction was completed." *Id.*[1] The City contends that "Adventure Outdoors' participation in the simulated straw sale violates Sections 922, 923, 924 and 1001 of Title 18 of the U S Code and that violation is a proximate cause of the City's injury." *Id.*, ¶ 94.

The City of New York raises causes of action of public nuisance, statutory nuisance, negligence *per se*, negligence, and negligent entrustment. It seeks an injunction ordering *inter alia* "each Defendant to comply with federal, state and local laws related to the sale of guns, including ceasing to engage in straw sales." *Id.* at 77. On the day the lawsuit was

---

[1] The court notes that Defendants provided a slightly different account of the transaction in their motion to dismiss. *See* Motion, at 7 n.7 (indicating that only the male investigator interacted with the salesperson and handled the gun, "[b]ut when the clerk asked Mr. Tounsel to fill out the federal paperwork, Ms. Nooner was – for the first time – brought into the transaction, and only she provided the identification and information on the ATF Form 4473. Mr. Tounsel then paid for the gun and the store clerk handed him the receipt.").

filed, the City of New York held a press conference announcing the suit and discussing actions of the gun dealers.

### C.   The Georgia Action

Thereafter, Plaintiffs, Adventure Outdoors, Inc., Jay Wallace, and Cecilia Wallace, filed a lawsuit in the Superior Court of Cobb County against Defendants, New York City; Michael Bloomberg, the Mayor of New York City; Michael A. Cardozo, Corporation Counsel of the City of New York; Raymond Kelly, Chief of Police of the New York Police Department; and John Feinblatt, Criminal Justice Coordinator of New York City. The court will refer to these Defendants as the New York City Defendants.[2]  Plaintiffs also sued the various private investigators used by New York City to simulate the straw purchases, specifically, the Nooner Investigative Group; Tanya Marie Nooner,[3] a Georgia resident and

---

[2]Plaintiffs first filed suit in state court on July 20, 2006. Defendants removed the suit to this court on August 18, 2006. After amending their complaint once, Plaintiffs then voluntarily dismissed that action in response to Defendants' assertion that federal question jurisdiction existed so as to preclude remand. *See Adventure Outdoors, Inc. et al. v. Bloomberg, et al.*, Civil Action No. 06-CV-1931-JOF. Several months later, Plaintiff filed the instant complaint, again in the Superior Court of Cobb County. Defendants removed the complaint to this court on November 29, 2006.

[3]During the pendency of this action, Ms. Nooner died. Plaintiffs filed a motion to amend complaint pursuant to Federal Rule of Civil Procedure 15(a) to add the Estate of Tanya Marie Nooner as a party. Defendants responded that the proper procedure was to move for substitution pursuant to Rule 25(a)(1). Plaintiffs then filed a motion to amend and substitute. The court GRANTS Plaintiffs' motion to amend complaint [18-1] to substitute the Estate of Tanya Marie Nooner in place of Tanya Marie Nooner. The court DENIES AS MOOT Plaintiffs' first motion to amend complaint [14-1].

principal of Nooner Investigative Group; Melissa Merced, of Nooner Investigative Group; Joseph Tounsel, of Nooner Investigative Group; James Mintz, principal of The James Mintz Group; and The James Mintz Group.   The court will refer to these Defendants as the Investigator Defendants.

Plaintiffs assert that Defendants Nooner, Tounsel, and perhaps Merced, entered Adventure Outdoors on April 8, 2006 in order to falsely and fraudulently purchase a firearm. *See* Cmplt., ¶¶ 14-15.   Plaintiffs contend that Defendants lied orally and on the written purchase form "to induce agents of Plaintiffs' business to sell" the firearm.   *Id.*, ¶ 15. Plaintiffs asserts that the New York City Defendants met and directed Defendants Nooner, Tounsel, and Merced to go into Adventure Outdoors to commit fraud.   *Id.*, ¶ 16.

Plaintiffs also assert that the New York Defendants maliciously libeled and slandered Plaintiffs "by dissemination of statements to, among others, the news media, both print and electronic; and both national and local, which the New York Defendants knew, or by the exercise of minimal due diligence would have known, were untrue."   *Id.*, ¶ 20.   This included characterizing Plaintiffs as "rogue gun dealers."   *Id.*, ¶ 21.

Count One of Plaintiffs' complaint for libel and slander sets forth specific statements made by Defendants Bloomberg, Cardozo, Feinblatt, and Kelly on May 15 and 21, 2006, including "these dealers are the worst of the worst," "a scourge on our society," "group of

bad apples who routinely ignore federal regulations," and "[p]lain and simple these dealers have New Yorkers[] blood on their Hands." *Id.*, ¶ 27.

Counts Two and Three of Plaintiffs' complaint are for gross negligence and negligence, respectively, for failing to (a) investigate whether the 21 guns referenced in the New York Action were negligently or unlawfully sold, (b) contact the Special Agent in Charge of the Atlanta ATF to determine "the truth and legality" of Plaintiffs' business, (c) inquire of Plaintiffs what firearms' sale safeguards were in place at the business, and (d) to "debrief" Defendant Nooner as to why she was asked to initial the "straw-man" purchase paragraph on April 8, 2006. *Id.*, ¶ 31.

Count Four asserts a claim of aiding and abetting.  Count Five raises special violations against Defendant Bloomberg based on his meeting with Atlanta Mayor Shirley Franklin "to present and persist in presenting egregious slander against the Georgia Plaintiffs." *Id.*, ¶¶ 36-38.  Plaintiffs also assert a claim of tortious interference with business relations. *Id.*, ¶ 39.

### D.   Contentions

Defendants argue that a substantial question of federal law exists in the case because the court must determine whether the gun brokers' sales violated federal law prohibiting straw purchases of guns in order to adjudicate Plaintiffs' negligence and defamation claims. In the alternative, Defendants argue that the court should dismiss Plaintiffs' complaint

8

because certain Plaintiffs do not have standing; the court does not have personal jurisdiction over Defendants; Plaintiffs did not properly file ante litem notices; and Plaintiffs' claims for libel, slander, negligence, and tortious interference fail as a matter of law.  Finally, Defendants argue that the court should transfer the case to the United States District Court for the Eastern District of New York under the "first-filed' rule.

Plaintiffs respond that there is no substantial question of federal law inherent in their state law claims such that those claims could "arise under" federal law.  Plaintiffs assert that their causes of action rest on misrepresentations made to Plaintiffs' employees which induced those employees to sell a gun to the investigators.  As such, Plaintiffs contend, the issue of federal law and regulation of "straw purchases" and the completion of an ATF form is not substantial enough to open the door to federal litigation.

## II.   Discussion

### A.      Motion to Remand

On a motion to remand, the party that removed the action to federal court bears the burden of proving the existence of federal jurisdiction.  *See Leonard v. Enterprise Rent-A-Car*, 279 F.3d 967, 972 (11th Cir. 2002).  All doubts with respect to federal jurisdiction should be resolved against removal and in favor of remand to state court.  *See Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996).

9

Defendants state that the complaint may be removed pursuant to 28 U.S.C. § 1441(c) which allows for removal because "[w]henever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 . . . is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein . . . ." *Id.* Section 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." *Id.*

"Although the vast majority of cases that fall within such federal-question jurisdiction are cases that arise under federal law that creates a cause of action, in limited circumstances, federal-question jurisdiction may also be available if a substantial, disputed question of federal law is a necessary element of a state cause of action." *Jairath v. Dyer*, 154 F.3d 1280, 1282 (11th Cir. 1998) (citing *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986)). In *Jairath*, the plaintiff alleged a state law cause of action based on a breach of duty created by the Americans with Disabilities Act. The Eleventh Circuit applied *Merrell Dow* and found that plaintiff's claims did not arise under federal law because there was no private right of action for damages under the ADA. *Id.* at 1282.

In *Merrell Dow*, the plaintiff alleged that the defendant drug company was negligent, and that its violation of the Federal Food, Drug and Cosmetic Act constituted a rebuttable presumption of negligence. The Court noted the fact that a federal question was an element

10

of a state law cause of action did not "automatically confer federal-question jurisdiction." 478 U.S. at 813.  The Court found significant that the Food, Drug and Cosmetic Act itself did not create a private remedy for a violation of branding requirements.  Ultimately, the Court held:

> We conclude that a complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

*Id.* at 817.  This is true even where the violation of the statute is a necessary element of a state law cause of action.  *See id.* at 813-14.  *But compare Ayres v. General Motors Corp.*, 234 F.3d 514 (11th Cir. 2000) (federal jurisdiction where resolution of suit depended only on interpretation of federal mail fraud statutes in conjunction with the Federal Motor Vehicle Safety Act).  In *Ayres*, the plaintiff alleged that General Motors had violated the Vehicle Safety Act and by doing so had committed federal mail and wire fraud.  The court found that establishing the violation of the federal mail and wire fraud statutes would be an essential element of the plaintiff's claims.  The court held that federal jurisdiction was proper because "plaintiff's cause of action has as an essential element the existence of a right under federal law which will be supported by a construction of federal law concluding that the federal crime is established, but defeated by another construction concluding the opposite."  *Id.* at 519.

11

The Supreme Court again addressed the issue of jurisdiction when a state law claim poses a substantial question of federal law in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005). There, the Internal Revenue Service seized real property owned by Grable to satisfy a federal tax delinquency and gave Grable noticed by certified mail before selling the property to Darue. *Id.* at 311. Grable did not take any action at that time, and the IRS gave Darue a quitclaim deed to the property. Five years later, Grable filed a quiet title action in state court asserting that Darue's record title was invalid because the IRS failed to notify Grable of its seizure in the manner specified in 26 U.S.C. § 6335(a). Darue removed the suit to federal district court under federal question jurisdiction "because the claim of title depended on the interpretation of the notice statute in the federal tax law." *Id.*

Ultimately, the Supreme Court granted certiorari on the jurisdiction question "to resolve a split within the Courts of Appeals on whether *Merrell Dow* [] always requires a federal cause of action as a condition for exercising federal-question jurisdiction." *Id.* at 311-12. The Court reviewed the history of "arising under" jurisdiction that had been recognized in *Merrell Dow* (and other cases for nearly 100 years) such that "federal question jurisdiction will lie over state-law claims that implicate significant federal issues." *Id.* at 312. The Court noted that the doctrine had been subject to "some trimming" and that it had "become a constant refrain in such cases that federal jurisdiction demands not only a

contested federal issue, but a substantial one, indicating serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Id.* at 313.  Further, "the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Id.* at 313-14.

The Court found that Grable's entire claim rested on whether he was given proper notice within the federal statute and that the meaning of that statute was in dispute and "appeared to be the only legal or factual issue contested in the case." *Id.* at 315.  "The meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court." *Id.*  The Court ultimately held that "the national interest in providing a federal forum for federal tax litigation is sufficiently substantial to support the exercise of federal question jurisdiction over the disputed issue on removal, which would not distort any division of labor between the state and federal courts, provided or assumed by Congress." *Id.* at 310.

The Court noted that *Merrell Dow* was not to the contrary.  Although *Merrell Dow* considered the fact that Congress had not provided a federal cause of action for violating the federal branding requirement at issue in the plaintiffs' negligence action, the *Grable* Court concluded that this statement in *Merrell Dow* did not render a federal cause of action a *necessary* condition of federal question jurisdiction. *Id.* at 317.  Thus, *Merrell Dow* "should

13

be read in its entirety as treating the absence of a federal private right of action as evidence relevant to, but not dispositive of, the 'sensitive judgments about congressional intent' that § 1331 requires." *Id.* at 318 (noting the significance of both the absence of a private right of action and the lack of preemption of state remedies).  Significantly, the Court pointed out that the "violation of federal statutes and regulations is commonly given negligence per se effect in state tort proceedings," and thus, the Court in *Merrell Dow* was reluctant to allow federal jurisdiction over state law claims resting on federal statutory violations because this would have shifted too many cases from state courts to federal courts.  *Id.* at 318-19 (quotation and citation omitted).  In contrast, "it is the rare state quiet title action that involves contested issues of federal law," so jurisdiction over Grable's action would not "materially affect, or threaten to affect, the normal currents of litigation." *Id.* at 319.

Here, to adjudicate Plaintiffs' causes of action, a court would have to consider the "straw purchase" scenario from two perspectives.  First, with respect to the libel and slander claims, because truth is a defense to such accusations, the court would have to determine whether Adventure Outdoors actually was complicit in a straw purchase.  There appears to be no dispute that federal liability for straw purchases arises out of interactive readings *inter alia* of 18 U.S.C. § 922(a)(6), which prohibits the making of false statements in the process of the sale of firearms, 18 U.S.C. § 924(a)(1)(A), and 18 U.S.C. § 1001, which prohibits making false statements on documents, in this case ATF Form 4473.  *See generally United*

*States v. Inglese*, 282 F.3d 528 (7th Cir. 2002) (describing federal prosecution of employees of gun shop for participation in straw purchase gun sales); *United States v. Nelson*, 221 F.3d 1206 (11th Cir. 2000) (prosecution of individuals who solicited others to make straw purchases on their behalf and noting that where individuals "supplied money for these purchases, intended to possess the firearms, and thus actually bought these firearms"); ATF Form 4473 (transferor certification at 31-34 that "it is my belief that it is not unlawful for me to sell, deliver, transport, or otherwise dispose of the firearm(a) listed on this form to the person identified in Section A"). Thus, questions of federal law are certainly present with respect to Adventure Outdoors' actions. (The court notes, however, that the paucity of factual allegations present in the New York complaint (¶¶ 91-94) would make that a difficult question to answer at this point in the litigation.)

Second, with respect to the negligence-related causes of action, the court would have to consider whether the private investigators, themselves, violated federal law by simulating a straw purchase. This aspect of Plaintiffs' case appears to be less clear-cut, and at this point, the court has located no case law to guide its consideration of the matter other than those noted above.

The court recognizes that the federal firearms scheme does not allow for a private right of action. As *Grable* notes, however, this is merely a factor to consider in the "arising under" analysis and is not dispositive itself. The court's investigation of the law

15

surrounding straw purchases under these circumstances convinces the court that this is an "important issue of federal law that sensibly belongs in a federal court" as the Supreme Court found the federal tax question in *Grable*. Further, as in *Ayres*, where the Eleventh Circuit held federal jurisdiction was appropriate because of a substantial question of federal law, establishing a violation of the federal firearms and other regulations – either by the investigators or by Adventure Outdoors – will be an essential element of numerous of Plaintiffs' causes of action. Thus, federal jurisdiction is proper because "plaintiff's cause of action has as an essential element the existence of a right under federal law which will be supported by a construction of federal law concluding that the federal crime is established, but defeated by another construction concluding the opposite." 234 F.3d at 519. For the foregoing reasons, the court DENIES Plaintiffs' motion to remand.

### B.    Motion to Dismiss

Defendants raise a plethora of arguments in their motion to dismiss, both in terms of jurisdiction and failure to state a claim. In their response, Plaintiffs address some of these arguments but not others. Plaintiffs appear to focus on the narrative facts of their complaint, and the court is not unsympathetic to this view. As the court indicated above, it is not clear that it is legally proper under federal law for private investigators to enter gun shops to pose as straw purchasers in an attempt to induce a sale.[4] However, the court must focus its

---

[4]These concerns are addressed in the letter of February 6, 2007, written by Michael Battle, Director of the Executive Office for United States Attorneys, United States

attention and detail on the legal issues raised by Defendants in their motion to dismiss.  For the purposes of clarity, for instance, the court notes that despite Plaintiffs' repeated references to "fraud" in their response to Defendants' motion to dismiss, Plaintiffs do not appear to have raised a claim of "fraud" in their complaint.

The court further notes that in its response to Defendants' motion to dismiss, Plaintiffs vigorously assert that they are suing the New York Defendants in their individual capacities.  *See* Plaintiffs' Response to Defendants' Motion to Dismiss, at 19 (Section G: "The Defendants are not being sued as officials, but as officials who went far beyond their legitimate roles in New York City and who committed fraud in Georgia and elsewhere and who broke the law as individuals, and New York City cannot ratify the illegal acts of its officials and employees.").  "The New York Defendants directed the Georgia Defendants in illegal conduct, and this too will be proven in discovery and trial.  The consequence is that the New York Defendants are being sued for their ultra vires conduct as individuals."  *Id.* at 20.  Because Plaintiffs have clarified that they are not suing the municipality of New

_____

Department of Justice, to John Feinblatt, Criminal Justice Coordinator for the City of New York.  Mr. Battle stated: "Although a decision has been made not to move forward with case filings in these matters, you should be aware that there are potential legal liabilities that may attach when persons outside of law enforcement undertake actions typically reserved for law enforcement agents.  This risk is particularly acute when such persons, however well-intentioned, but without proper law enforcement authority, misrepresent that they are the actual purchasers of the firearms when, in fact, the purchases are being made on behalf of another person or entity (for instance, on behalf of the City)."

York, the court will not consider Defendants' argument that Plaintiffs failed to make the proper ante litem notices.

        1.     <u>Service of Process</u>

In their motion to dismiss, the New York Defendants argue that Plaintiffs have not properly served them with the complaint. Plaintiffs' complaint was removed before any Defendant was served with process. Thus, under 28 U.S.C. § 1448, the service of process rules of the Federal Rules of Civil Procedure apply. Federal Rule of Civil Procedure 4(e) provides that service may be effected "pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State" or

> by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion . . . or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

*Id.* Plaintiffs, therefore, can perfect service as permitted under Rule 4(e) or either Georgia or New York law.

Under Georgia law, service of a defendant individually, absent special circumstances, is made

> to the defendant personally, or by leaving copies thereof at the defendant's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein, or by delivering a copy of the summons and

18

> complaint to an agent authorized by appointment or by law to receive service
> of process.

*See* O.C.G.A. § 9-11-4(e)(7).  Under New York law, service may be made to a person of

suitable age and discretion at the actual place of business, dwelling place or usual place of

abode of the person to be served and by a subsequent mailing of the summons and

complaint.  *See* N.Y. McKinney's C.P.L.R. 308, subd. 2.

Here, the first attempted service on Defendant James Mintz occurred on December 1,

2006, at his "most notorious place of business," 32 Avenue of the Americas, 21st Floor, New

York, NY 10013, by delivering a copy of the summons and complaint to Andrew B.

Melnick (General Counsel).  The same day, Defendants Michael Bloomberg, John Feinblatt,

and Michael Cardozo, were served with the complaint by delivery to Celeste Spiridigliozzi,

Assistant Unit Chief, at 100 Church Street, Fourth Floor, New York, NY.  Defendant

Raymond Kelly was served by delivering a copy of the summons and complaint to Evan

Gluck, Agency Attorney, at the New York City Police Department, 1 Police Plaza #1408,

New York, NY 10038.

At this point, Defendants filed their motion to dismiss citing problems with Plaintiffs'

service of process.  Plaintiffs then went through an additional round of attempted service.

Service on Michael Bloomberg was attempted on February 8, 2007 at City Hall at

12:20 p.m.  Police Officer Alfonzo at the gate refused the server admission and instructed

him to serve corporation counsel.  Service was attempted at Mr. Bloomberg's residence at

[**REDACTED**] at 3:47 p.m.  There, Lieutenant Dowd informed the server that he must serve corporation counsel.  The server indicated he wanted to serve Mr. Bloomberg individually.  Sergeant Gallogry appeared and informed the server he would need to serve corporation counsel and that they were waiting for the server to arrive there.  The server then delivered the complaint and summons to Madelyn Santana at the City of New York's Corporation Counsel.  The server also mailed a copy of the complaint and summons to Mr. Bloomberg, care of the Office of the Mayor of New York City, New York City Hall, City Hall Park, New York, NY 10007, and to his residence at [**REDACTED**].

Similarly, with respect to John Feinblatt, the server attempted to serve at City Hall at 12:20 p.m.  Police Officer Alfonzo at the gate refused the server admission and instructed him to serve corporation counsel.  Service was attempted at Mr. Feinblatt's residence at [**REDACTED**] at 5:17 p.m.  A copy of the summons and complaint was left with Marina Williams, a housekeeper/babysitter.  The server then delivered the complaint and summons to Madelyn Santana at the City of New York's Corporation Counsel.  The server also mailed a copy of the complaint and summons to Mr. Feinblatt care of the Office of the Mayor of New York City, New York City Hall, City Hall Park, New York, NY 10007, and to his residence.

For Michael Cardozo, on February 8, 2007, the server delivered the complaint and summons to Madelyn Santana at the City of New York's Corporation Counsel at 100

Church Street, Fourth Floor, New York, NY.  The same day a different process server went to Mr. Cardozo's residence at [**REDACTED**] and gave a copy of the complaint and summons to Nancy Cardozo, Mr. Cardozo's wife.  A copy of the complaint and summons was also mailed to Mr. Cardozo at his work and residence addresses.

On February 8, 2007, the server delivered a copy of the complaint and summons to Raymond Kelly, at the New York City Police Department, care of David Goldfarb, a police department attorney.  Service was also mailed to Raymond Kelly at 1 Police Plaza, #1408, New York, NY 10038.

For James Mintz, on February 8, 2007, the server delivered a copy of the summons and complaint at [**REDACTED**] to Richard Rivas, a concierge in the lobby.  Service was also mailed to that address.  The server also served Andrew Melnick, General Counsel, at The James Mintz Group, 32 Avenue of the Americas, 21st Floor, New York, NY 10013.  A copy was also mailed to this business address.  Service to Defendant James Mintz Group was made through its managing agent, Andrew Melnick, at 32 Avenue of the Americas, 21st Floor, New York, NY 10013, and mailed there as well.

The plaintiff bears the burden of establishing proof of service of process.  *See Ritts v. Dealers Alliance Credit Corp.*, 989 F. Supp. 1475 (N.D. Ga. 1997) (Forrester, J.). Defendant Kelly was properly served under New York law because the summons and service was left with David Goldfarb at Kelly's actual place of business, and there is no

21

contention that Mr. Goldfarb, an attorney in the Police Department, is not a person of suitable age and discretion, and a copy of the complaint and summons was also immediately mailed to Defendant Kelly at his actual place of business. Defendant Cardozo was properly served under New York law because a copy of the complaint and summons was left with his wife at his residence, and a copy of both was immediately mailed to Defendant Cardozo at his residence. Defendant Mintz was properly served under New York law because a copy of the summons and complaint was left with Andrew Melnick, managing agent of Defendant Mintz's business, and there is no contention that Mr. Melnick is not a person of suitable age and discretion. Further, a copy of both was immediately mailed to Defendant Mintz at his business address.

Defendant Feinblatt was properly served under New York law because a copy of the complaint and summons was left at his residence with the housekeeper/babysitter, and there is no contention that this individual was not of suitable age and discretion. (The court notes that New York law, for example, permits the service of summons upon a doorman or concierge when that person does not permit access to the actual residence of the person to be served.) A copy of the complaint and summons was then immediately mailed to Defendant Feinblatt at his residence.

With regard to Defendant Bloomberg, the process server was specifically instructed at both his residence and at City Hall to take the summons and complaint to the Corporation

22

Counsel who was waiting for him because security personnel at City Hall and the residence would not permit the process server to personally serve Defendant Bloomberg.  There, Madelyn Santana, an employee of the Corporation Counsel, was waiting for the process server and accepted the documents.  A copy was then immediately mailed to Defendant Bloomberg at both the City Hall address and the residence.  To the extent Defendants would continue to argue that attempts of service at his residence, at City Hall, and at the Corporation Counsel, as well as mailing to all of the above, were insufficient, the court would certainly consider the instructions given to the process server in determining whether sufficient service was made under circumstances of potential frustration or resistance.

In sum, the court finds that Plaintiffs have properly served all New York Defendants, as well as James Mintz and The James Mintz Group.

> 2.   Personal Jurisdiction

The New York Defendants argue that the court does not have jurisdiction over them in their individual capacities because they have had no contacts with Georgia, and any contacts in their official capacity cannot be the basis for jurisdiction.  When an evidentiary hearing is not held, the

> plaintiff must establish a prima facie case of personal jurisdiction over a nonresident defendant. A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict. The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. Finally, where

23

the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff.

*Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 255 (11th Cir. 1996).

A federal court must have both statutory and constitutional authority to assert jurisdiction over a defendant. *See McGee v. International Life Ins. Co.*, 355 U.S. 220 (1957). In analyzing personal jurisdiction, the court must first determine whether a defendant is subject to jurisdiction under Georgia's long arm statute. If so, the court must then determine if an assertion of jurisdiction would be constitutional. *See Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

The Georgia Long Arm statute permits a Georgia court to exercise personal jurisdiction over a nonresident if he "[t]ransacts any business within this state." *See* O.C.G.A. § 9-10-91(1). The statute also permits the exercise of jurisdiction if the nonresident "[c]ommits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act." *See id.*, § 9-10-91(2). The statute goes on to state the jurisdiction may also be had over a nonresident who "[c]ommits a tortious injury in this state caused by an act or omission outside this state, if the tortfeasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state." *Id.*, § 9-10-91(3).

24

Subsection (2) of the Georgia Long Arm statute has been interpreted as "unequivocal and unambiguous in mandating the exclusion of an action predicted on defamation." *See*, *e.g.*, *Worthy v. Eller*, 265 Ga. App. 487 (2004); *Balmer v. Elan Corp.*, 261 Ga. App. 543, 546 (2003); *Cassells v. Bradlee Management Services*, 161 Ga. App. 325, 327 (1982). Thus, at least with respect to their defamation claims, Plaintiffs cannot gain jurisdiction over Defendants via subsection (2). Courts, however, have also considered whether a defamation claim can be pursued through subsection (3) of the Long Arm statute. *See Bradlee Management Services, Inc. v. Cassells*, 249 Ga. 614 (1982). Under that subsection, however, there would need to be minimum contacts with Georgia apart from the contacts arising from the acts of alleged defamation. Here, there is no evidence that any of Defendants have regularly solicited business or engaged in any persistent course of conduct in the state which would constitute "minimum contacts" for the purposes of the "general" jurisdiction described in subsection (3).

To determine whether the court has jurisdiction over the New York Defendants pursuant to subsection (1) of the Long Arm statute requires a more lengthy analysis. Prior to 2005, Georgia courts had interpreted subsection (1) with certain limitations, such as applying only to contract cases or requiring the physical presence of the defendant in Georgia. However, in *Innovative Clinical & Consulting Service, LLC v. First National Bank of Ames*, 279 Ga. 672 (2005), the Supreme Court of Georgia held that this section of the

25

Long Arm Statute contained no explicit limiting conditions and "a literal construction grants Georgia courts the unlimited authority to exercise personal jurisdiction over a nonresident who transacts any business in this State." *Id.* at 675 (to the extent permitted by due process). "We hereby overrule all prior cases that fail to accord the appropriate breadth to the construction of the 'transacting any business' language of O.C.G.A. § 9-10-91(1)." *Id.* at 676.

Since the Supreme Court's decision in *Innovative Clinical*, Georgia courts have explained that "[j]urisdiction exists on the basis of transacting business in this state if (1) the nonresident defendant has purposefully done some act or consummated some transaction in this state, (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice." *See Aero Toy Store, LLC v. Grieves*, 279 Ga. App. 515, 518 (2006). This analysis, of course, is similar to that minimum contacts and fairness analysis required under the Due Process Clause of the United States Constitution.

Here, the theory of Plaintiffs' complaint – as explicitly expressed in the complaint itself – is that the New York Defendants got together and conceived a plan whereby they would hire private investigators to enter gun shops in Georgia, including Adventure Outdoors, and pose as persons undertaking a straw purchase to determine whether the gun shop would permit the purchase to go through. The New York Defendants call this

promoting public safety; Plaintiffs call it a conspiracy.  In terms of personal jurisdiction, the result is the same.  Under the allegations in the complaint, the New York Defendants planned for and instructed individuals to enter establishments in the state of Georgia and purchase firearms.  This is the consummation of a transaction in Georgia, and that transaction is the basis for Plaintiffs' claims.  The New York Defendants are not insulated from jurisdiction in Georgia simply because they concocted their plan within the five boroughs.  Georgia law is clear on this point.  *See Rudo v. Stubbs*, 221 Ga. App. 702, 704 (1996) ("When the purpose of a conspiracy is to commit an intentional tort against Georgia, all of the coconspirators are purposefully directing their activities toward Georgia and should reasonably anticipate being haled into court here.").[5]  Under the allegations raised in the complaint, the New York Defendants hired and directed the activities of the private investigators in Georgia.  Therefore, the harm alleged by Plaintiffs is not only any actions taken by the New York Defendants but their direction of acts of the private investigators in the state of Georgia.

The court disagrees with Defendants' assertion that Plaintiffs have not sufficiently alleged a conspiracy and only provide "conclusory allegations" of the non-residents' participation.  Plaintiffs' complaint sets forth the nature of the conspiracy.  *Cf. Sky Shots*

---

[5]Plaintiffs do not allege a separate count of "conspiracy" in their complaint, but rather use it as the basis for personal jurisdiction.  Therefore, the court need not address Defendants' argument that Plaintiffs failed to allege an underlying tort in association with "conspiracy."

*Aerial Photography, Inc. v. Franks*, 250 Ga. App. 411 (2001) (finding no jurisdiction where there was no allegation that nonresident had any connection to fraudulent acts of resident defendant). Additionally, the court finds it more than a bit ironic that Defendants would attempt to deny that they were involved in planning to send private investigators into various gun establishments in the state of Georgia. A significant portion of the factual support for the New York lawsuit is garnered from the results of these "sting" operations. The court is fairly confident in concluding that the New York Defendants are not disavowing any association with those operations in their lawsuit in the Eastern District of New York.

The New York Defendants also allege that they are not subject to jurisdiction in the state of Georgia because the acts complained of were conducted in their official capacities. Defendants cite *Club Car, Inc. v. Club Car (Quebec) Import, Inc.*, 362 F.3d 775 (11th Cir. 2004), for this proposition.[6]  *Club Car*, however, stands for the proposition that a corporate officer cannot be haled into a foreign forum simply because he is the president of a corporation that may have done business in the forum. Rather, there must be a determination that the corporate officer, himself, took acts, such as negotiating a contract or "enjoying substantial financial benefit" from a contract. Here, the New York Defendants

---

[6]Defendants also cite to *Cawley v. Bloch*, 544 F. Supp. 133, 135 (D. Md. 1982), for the concept that corporate officers have a "fiduciary shield" with respect to jurisdiction when undertaking acts on behalf of the corporation. Leaving aside for a moment whether this shield would equally apply to elected officials, the court notes that Georgia law holds that the fiduciary shield does not apply to tort allegations. *See*, *e.g.*, *Mitchell v. The Gilwil Group, Inc.*, 261 Ga. App. 882, 884-85 (2003).

28

are not being sued simply because they have executive positions in the government of the City of New York, but rather because they are alleged to be the actual persons who directed the activities of the private investigators in Georgia.

Thus, the court finds that the New York Defendants purposefully directed acts in the forum state and that Plaintiffs' causes of action of negligence and defamation arise out of the acts of the investigators' "sting" operations, satisfying the first two elements of the "transacting business in the state" test of O.C.G.A. § 9-10-91(1).  For the final factor of that test, the court turns to a due process analysis, as under federal constitutional law.

The court considers two factors when determining whether asserting personal jurisdiction over nonresident defendants would comport with due process.  First, the court must decide whether the defendant has "minimum contacts" with the forum state.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-74 (1985).  To satisfy minimum contacts for the purposes of specific jurisdiction, the contacts must (1) be related to plaintiff's cause of action; (2) involve some act of "purposeful availment" by the defendant of the privileges of the forum; and (3) be such that the defendant should reasonably anticipate being "haled into court there."  *Francosteel Corp.*, 19 F.3d at 627.  If the court finds sufficient minimum contacts, it must then determine whether the exercise of personal jurisdiction would offend the "traditional conception of fair play and substantial justice."  *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945).

29

As the court finds above, the New York Defendants engaged in sufficient contacts with respect to the sting operations such that they purposefully availed themselves of the forum state. Further, the court finds that the New York Defendants should have reasonably anticipated being haled into court here. According to the allegations raised in the complaint, the New York Defendants purposefully decided to send the private investigators in to Georgia to attempt to purchase firearms from gun shops in Georgia. The New York Defendants did not merely instruct the private investigators generally to try to find locations where the guns were originating. They specifically told the private investigators to go into the Adventure Outdoors shop, as well as several others, in Georgia. Plaintiffs allege that what the private investigators did in Georgia constitutes a tort. Under these circumstances, the court finds no due process concern which would caution against jurisdiction.

In determining the "fairness and reasonableness of a forum's exercise of jurisdiction, a court must consider, among other things, the burden on the defendant, the interests of the forum . . ., and the plaintiff's interest in obtaining relief." *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1551 (11th Cir. 1993) (internal quotations and citations omitted). Although there may be some burden in asking a defendant to litigate this case in a foreign state, the Eleventh Circuit has noted that "modern methods of transportation and communication" have greatly reduced such burdens. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 632 (11th Cir. 1996). Further, Georgia does indeed have an interest in

30

adjudicating disputes involving Georgia corporations. As such, the court does not find that this is one of those rare cases in which the concepts of "fair play" and "substantial justice" would defeat the reasonableness of jurisdiction. Having determined that the court has jurisdiction over all Defendants, the court now turns to Defendants' motion to dismiss the various claims in Plaintiffs' complaint.

3.       Gross Negligence and Negligence

In their complaint, Plaintiffs allege that Defendants did not consult with lawyers about "the illegal nature of the scheme" or ignored advice "regarding the illegality of the conspiracy." *See* Cmplt., ¶ 31. Plaintiffs then go on to allege failures in Defendants' investigation of Plaintiffs' business operations, such as not contacting the Bureau of Alcohol, Tobacco, and Firearms to learn the extent of Plaintiffs' assistance in federal investigations; not inquiring as to the safeguards in place at Adventure Outdoors to prevent fraudulent firearms purchases; and failing to debrief the private investigators on the reasons why Investigator Nooner was requested to sign the "straw-man" purchase paragraph. *Id.* Plaintiffs' complaint does not specify any damages suffered by Plaintiffs as a result of Defendants' alleged negligent conduct, although Plaintiffs do allege in Paragraph 39 (entitled "tortious interference with business relations") that the New York Defendants "tortiously interfered with the Plaintiffs' business relations by each and every of the

31

foregoing actions . . . to the express damage of the business relations of the Georgia Plaintiffs." *Id.*, ¶ 39.

In their motion to dismiss, Defendants argue that Plaintiffs' negligence claims fail because (1) failure to conduct a proper investigation is not cognizable as a negligence action under Georgia law, citing *Tarver v. Wills*, 174 Ga. App. 550 (1985), and (2) the only damages claimed by Plaintiffs are to "business relations," but no economic loss is permitted under Georgia law.  Plaintiffs do not respond to either of these arguments.

In *Tarver*, an individual filed a medical malpractice suit against a doctor.  The doctor's motion for summary judgment in the malpractice suit was unopposed and was granted.  The doctor then filed suit against the individual's attorney for having "maliciously" filed the malpractice action.  The court of appeals held that, at most, the suit could be one for malicious use of process.  *Id.* at 550.  The court further held that there could be no cause of action against the attorney for negligence in filing the malpractice suit because of public policy concerns with respect to access to the courts and the attorney's legal duty to his own client.  *Id.* at 551.

The court finds that this case citation alone is not sufficient to warrant dismissal at this stage.  As an initial matter, it is unclear to the court that there is an equal position between the executive officials of the City of New York making a decision to initiate a lawsuit (allegedly after insufficient investigation) and the attorney for an injured plaintiff.

32

Furthermore, as stated above, Plaintiffs' negligence claim does not seem to be limited to Defendants' alleged failure to investigate prior to filing a lawsuit, but rather it also seems to encompass a negligent failure to appreciate the allegedly illegal nature of the "sting" operations.   To be clear, the court certainly appreciates Defendants' contention that Plaintiffs' negligence cause of action is not artfully formulated and ultimately may be deficient on the element of legal duty.   The court merely holds that it cannot dismiss Plaintiffs' negligence action at this stage based on the lone citation to *Tarver*, an action against an attorney, which does not describe the full set of Defendants here.

Defendants next argue that Plaintiffs have not alleged damages cognizable in a tort action.  The court finds this argument more persuasive.  In *General Electric Co. v. Lowe's Home Centers*, 279 Ga. 77 (2005), the Supreme Court of Georgia held that "[u]nder the economic loss rule, a plaintiff can recover in tort only those economic losses resulting from injury to his person or damage to his property; a plaintiff cannot recover economic losses associated with injury to the person or damage to the property of another." *Id.* at 78 (retail store filed suit against manufacturer seeking to recover damages caused by environmental contamination of retail store's property).  "Although the economic loss rule is more often applied in the context of products liability cases or 'to distinguish between those actions cognizable in tort and those that may be brought only in contract,' *City of Cairo v. Hightower Consulting Engineers, Inc.*, 278 Ga. App. 721, 728 (2006)," the reasoning has

been applied in other contexts. *See*, *e.g.*, *Remax The Mountain Co. v. Tabsum, Inc.*, 280 Ga. App. 425 (2006) (where business owners filed suit against owners of a mining facility alleging that a detour caused by the company's negligent dumping of groundwater caused them to lose revenue and profits). *See also Alco Standard Corp. v. Westinghouse Electric Corp.*, 206 Ga. App. 794, 794-95 (1992) (affirming superior court holding that "a cause of action in negligence may not be maintained to recover for economic injury"). Thus, the court finds that because the only damages alleged by Plaintiffs to have been caused by Defendants' negligence is to their "business" their negligence tort claim is barred by the "economic loss" rule.

However, to the extent that Plaintiffs' description of damages is intended to also state a claim for tortious interference with business relations, it survives Defendants' motion to dismiss. To state a claim for tortious interference with business relations, "a plaintiff must show the defendant (1) acted improperly and without privilege, (2) acted purposely and with malice with the intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with the plaintiff, and (4) caused plaintiff financial injury." *See*, *e.g.*, *Renden, Inc. v. Liberty Real Estate Ltd. Partnership*, 213 Ga. App. 333, 334 (1994).

Defendants contend that Plaintiffs cannot show their actions were without privilege and that Plaintiffs have not alleged that any parties that have not entered into a relationship

34

or have discontinued a business relationship based on the actions of Defendants.  The court addresses below the fact that the privilege issues at stake here cannot be resolved on a motion to dismiss.  As to Defendants' second argument, the court finds that on a motion to dismiss, it is sufficient for Plaintiffs to allege – as they have done in Paragraph 39 – that their business relations have been damaged.  *Compare Lively v. McDaniel*, 240 Ga. App. 132 (1999) (dismissing tortious interference claim on summary judgment because plaintiff could not "identify a single client that he has lost or failed to acquire" due to defendant's actions); *Jenkins v. General Hospitals of Humana*, 196 Ga. App. 150, 151 (1990) (granting summary judgment in favor of defendant because plaintiff could not "name a single patient he has lost or failed to acquire" due to defendant's acts).  For the foregoing reasons, the court GRANTS Defendants' motion to dismiss as to Plaintiffs' negligence claims, but DENIES Defendants' motion to dismiss as to Plaintiffs' tortious interference with business relations claim.

4.    <u>Libel and Slander</u>

Defendants allege that only Plaintiff Adventure Outdoors may bring a libel and slander claim against them and not Plaintiffs Jay and Cecilia Wallace.  In support of this contention, Defendants point to *WMH, Inc. v. Thomas*, 195 Ga. App. 61, *rev'd in part on other grounds*, 260 Ga. 654 (1990).  There, the court stated that an "individual may have a cause of action for defamatory statements made about a company when it is known that he is the owner of the company ***and*** his name is a component part of the company name."  *Id.* at 65 (emphasis added) (citing *Weatherhold v. Howard*, 143 Ga. 41 (1915); *Southland Publishing Co. v. Sewell*, 111 Ga. App. 803 (1965)).

In *Southland Publishing*, the court held that the

> fact that the defamatory publication in terms designated a certain named place of business, 'Smith & Sewell Garage,' and did not refer to the plaintiff individually, does not as a matter of law prevent a recovery by him, where as here, the plaintiff alleged that he was a co-owner of the garage, and was understood by the citizens of Forsyth County to be the 'Sewell' affiliated with that business, and he was therefore identified personally in the publications complained of.

111 Ga. App. at 809.  The plaintiff in that case was Carl Earl Sewell.  In *Weatherholt*, the plaintiff was permitted to proceed on his defamation claims where he formerly owned the company and the company's trade name has the plaintiff's individual name as a component part.  143 Ga. 41.

36

Here, Plaintiffs allege in their complaint

> Plaintiffs Jay Wallace and Cecilia Wallace are Georgia Residents and were jointly and severally engaged in managing, promoting, and fulfilling the legitimate business in the sale of firearms, among many other items, of Adventure Outdoors, Inc., in their capacity as principals of Adventure Outdoors, Inc. on or about April 8, 2006.

> The Wallace family is closely associated with Adventure Outdoors, Inc. and in terms of reputations, the individuals and the company are interchangeable with each other, and locally are considered one and the same. A discussion of Adventure Outdoors is a discussion of the individuals, Jay and Cecilia Wallace.

Cmplt., ¶¶ 12-13. Under the holdings of *WMH*, *Southland*, and *Weatherholt*, it must be known that the individual is an owner of the business and the name of the individual must be a component part of the business. While Plaintiffs allege that they are associated with the business Adventure Outdoors, their name "Wallace" does not appear in the name of the business. Thus, the court finds that only Adventure Outdoors may pursue the defamation claims against Defendants.

The parties next make a number of procedural arguments with respect to the interaction of Plaintiffs' defamation claims with Georgia's anti-SLAPP (Strategic Lawsuits Against Public Participation) statute, codified at O.C.G.A. § 9-11-11.1. The Supreme Court of Georgia has held that

> the purposes of Georgia's anti-SLAPP statute are to encourage citizen participation in matters of public significance through the exercise of the right of free speech and the right to petition the government for redress of

grievances, and to prevent their valid exercise from being chilled through abuse of the judicial process.

*Atlanta Humane Society v. Harkins*, 278 Ga. 451, 452 (2004).  In order to achieve these goals, the statute requires that written verification under oath accompany any claim asserted against a person arising from an act "which could reasonably be construed as an act in furtherance of the right of free speech or the right to petition government for a redress of grievances . . . in connection with an issue of public interest or concern." *See* O.C.G.A. § 9-11-11.1(b).  The verification must certify that the party and his attorney have read the claim and to the best of their knowledge after a reasonable inquiry, the claim is well grounded in fact and is warranted by existing law or a good faith argument for the extension of existing law, and that the claim is not based on an act privileged under O.C.G.A. § 51-5-7(4), and that the claim is not interposed for an improper purpose or to cause unnecessary delay or needless increase in the cost of litigation.  *See* O.C.G.A. § 9-11-11.1(b).

The New York Defendants argue that because their New York lawsuit (and accompanying press conference and press releases) are statements made before a judicial proceeding, Plaintiffs' causes of action against those statements must be verified under Georgia's anti-SLAPP statute and Plaintiffs have not done so.

Before the court can proceed to apply the anti-SLAPP statute to the claims raised in this litigation, however, the court must determine whether the anti-SLAPP statute applies

38

in federal court.[7]  The *Erie* doctrine requires federal courts to apply the substantive law of a state when deciding substantive state law claims and federal law with regard to procedural matters.  *See Burlington N.R.R. v. Woods*, 480 U.S. 1 (1987); *Walker v. Armco Steel Corp.*, 446 U.S. 740 (1980); *Hanna v. Plumer*, 380 U.S. 460 (1965); *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938).  To distinguish substantive from procedural statutes, the Supreme Court has articulated a two-step test.  Initially, a court must determine whether the state statute in question is in "direct collision" with any Federal Rule of Civil Procedure.  *Hanna*, 380 U.S. at 472.  A direct collision between a state statute and a federal rule occurs when the Federal Rule by itself is "sufficiently broad to control the issue," *Walker*, 446 U.S. at 750, or where the purposes of the Federal Rule and state statute are "sufficiently coextensive" to preclude the application of the state law, *Woods*, 480 U.S. at 7.  When conducting this analysis, courts must not construe Federal Rules narrowly to avoid a direct conflict but rather must give the rules their plain meaning.  *Walker*, 446 U.S. at 750.

If a direct conflict exists, then the Federal Rule controls unless it is found unconstitutional or found to modify, enlarge, or abridge any substantive rights under the Rules Enabling Act, 28 U.S.C. § 2072.  The Federal Rules of Civil Procedure are granted

---

[7]As discussed above, Defendants removed this suit to federal court on the basis of "arising under" jurisdiction of a substantial federal question with respect to the causes of action related to the actual straw man purchases.  Whether the court considers the defamation claim as a supplemental state law claim or a diversity jurisdiction claim because it involves only the New York Defendants, the court would have to determine whether to apply the state law or a Federal Rule of Civil Procedure.

presumptive validity under this test and never have been found to violate this provision of the Supreme Court's test, either collectively or independently.  *See Hanna*, 380 U.S. at 472-74.  Where no direct conflict exists, the state statute controls only if failure to apply it will thwart the "twin aims" of *Erie* by promoting forum shopping or unfairly discriminating against residents of the forum state.  *See Hanna*, 380 U.S. at 468.

Under *Hanna*, the court finds that the verification provision of O.C.G.A. § 9-11-11.1 is contrary to the Federal Rules of Civil Procedure and does not apply in this case.  Section 9-11-11.1 is certainly procedural.  *See Providence Construction Co. v. Bauer*, 229 Ga. App. 679 (1997) (describing anti-SLAPP statute's "several procedural safeguards").  Further, it also applies a heightened pleading requirement on plaintiffs in a defamation action, such that it conflicts with Federal Rule of Civil Procedure 8(a) which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 8(a) is constitutional and falls within the scope of the Rules Enabling Act.  *See Carter v. Hennessey*, 781 F.2d 1569, 1570 (11th Cir. 1986) (holding that under *Hanna* federal court should follow Rule 8(a) rather than state's strict pleading requirements).  *See also Baird v. Celis*, 41 F. Supp. 2d 1358, 1362 (N.D. Ga. 1999) (Camp, J.) (holding that affidavit requirement of O.C.G.A. § 9-11-9.1 in medical malpractice actions does not apply to case brought in federal court).  For the foregoing reasons, the court will not apply the procedural aspects of Georgia's anti-SLAPP statute to this litigation, and the court finds that any failure

40

of Plaintiffs to "verify" their complaint under the requirements of O.C.G.A. § 9-11-11.1(b) is not grounds for dismissal in federal court. *See, e.g., Stuborn Ltd. Partnership v. Bernstein*, 245 F. Supp. 2d 312 (D. Mass. 2003) (refusing to apply procedural rules of Massachusetts anti-SLAPP statue in federal court).[8]

The court recognizes, however, that certain aspects of the statute could be considered "substantive" in the sense of what communications are privileged under O.C.G.A. § 51-5-7. *See Atlanta Humane Society v. Harkins*, 278 Ga. 451 (2004) (describing such provisions as "substantive"). Those substantive provisions are applicable in federal court. *Compare United States v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 970-73 (9th Cir. 1999) (permitting the application of California's anti-SLAPP statute with respect to the provision of a special motion to strike and the availability of fees and costs), *with Metabolife International, Inc. v. Wornick*, 264 F.3d 832 (9th Cir. 2001) (holding that discovery provisions of California's anti-SLAPP statute would not apply in federal court).[9]

---

[8]The court is aware that in *Buckley v. DIRECTV, Inc.*, 276 F. Supp. 2d 1271, 1275 n.5 (N.D. Ga. 2003) (Shoob, J.), the court, applying the Ninth Circuit precedent, found that there was no *Erie* conflict between the Federal Rules and the procedural aspects of Georgia's anti-SLAPP statute. *See also AirTran Airlines, Inc. v. Plain Dealer Publishing Co.*, 66 F. Supp. 2d 1355, 1369 (N.D. Ga. 1999) (Moye, J.) (assuming without deciding that Georgia anti-SLAPP statute applies in federal diversity actions). The court disagrees with the analysis in those cases.

[9]Because of the manner in which the court rules below, the court need not determine whether the anti-SLAPP statute would provide protection to the New York Defendants who, obviously, are not residents of Georgia. *See* O.C.G.A. § 9-11-11.1(a) (noting that the "General Assembly of Georgia finds and declares that it is in the public interest to encourage

41

The court now turns to Defendants' contention that Plaintiffs' defamation claims fail because Defendants' statements were privileged (1) as fair and honest reportings of judicial proceedings (the filing of the New York complaint) and (2) as statements made in the good faith performance of a public duty. Defendants also aver that the statements were "opinion" and therefore outside the scope of libel and slander laws. Plaintiffs respond that whether theses statements were made in good faith will be a question for the jury.

To review, Plaintiffs allege that the following statements made by the New York Defendants are defamatory. By Defendant Bloomberg: ". . . these dealers are the worst of the worst," "a scourge on our society," "and most are sold by a small [group] of rogue gun dealers who refuse to obey federal laws," "caught them . . . breaking the Federal laws regulating gun sales," "group of bad apples who routinely ignore federal regulations." By Defendant Cardozo: "stop your illegal conduct or you too will face this kind of penalty" and "targeting 15 specific irresponsible gun dealers." Defendant Feinblatt: ". . . holding gun dealers who break the law accountable . . .," ". . . sent a loud and clear message to rogue dealers . . .," "immoral and corrupt dealers . . .," ". . . small band of rogue dealers . . .," and "Plain and simple these dealers have New Yorkers' blood on their Hands." By Defendant

---

participation by the citizens of Georgia in matters of public significance through the exercise of their constitutional rights of freedom of speech and the right to petition the government for redress of grievances"). The court also declines to consider whether the statute would apply to protect elected officials as opposed to "citizens."

Kelly: ". . . lost their lives . . . as a result of this deadly commerce. . . . these dealers are . . . careless . . . reckless." *See* Cmplt., ¶ 27.[10]

Georgia and New York both recognize a conditional privilege for fair and accurate reporting of the facts of a judicial proceeding. *See* O.C.G.A. § 51-5-7(6); *Minton v. Thomson Newspapers, Inc.*, 175 Ga. App. 525 (1985); N.Y. Civil Rights Law § 74. However, the statements listed above are not reporting of the facts of a judicial proceeding. Other aspects of the press conference and press releases made by the New York Defendants may have reported the facts of the filing of the New York Complaint and its causes of action, for example. But the statements Plaintiffs use as the basis for their defamation actions do not describe the judicial proceedings; rather, they express the New York Defendants' characterization of the actions of Adventure Outdoors. Therefore, the court finds that the privilege for reporting on judicial proceedings is not applicable to the challenged statements.

At this stage, the court must engage in a choice of law analysis. Although Georgia law and New York law have some aspects of privilege in relation to defamation claims in common (such as the existence of a privilege for the fair reporting of judicial proceedings),

---

[10]Plaintiffs allege these statements were made by the New York Defendants, not the Private Investigator Defendants. As such, it is clear that Plaintiffs have no defamation cause of action against the Private Investigator Defendants.

there exists a conflict between Georgia and New York law as to the extent of privilege granted to public officials engaged in public duties.

In New York (with certain limitations not obviously relevant here), public officials enjoy absolute immunity for statements made in the course of their official duties relating to matters within the jurisdiction of their official duties. *See*, *e.g.*, *Clark v. McGee*, 49 N.Y.2d 613, 617 (N.Y. 1980). In Georgia, however, the privilege extended to public officials is not absolute, but rather is conditional. Under Georgia law, "statements made bona fide in the performance of a public duty are privileged; communications made by a public official with respect to his official duties are privileged." *See*, *e.g.*, *McKinnon v. Trivett*, 136 Ga. App. 59, 61-62 (1975) (privilege attached where statements made by mayor at a town meeting and concerned theft of city funds). "However, we have held that this privilege may be lost when the official acts wilfully, corruptly, or maliciously." *Id.* at 62. Clearly, this absolute and conditional privilege distinction is particularly relevant at the motion to dismiss stage.

Once again, the court applies Georgia's choice of law provisions to determine which forum's law applies to the defamation claims. Georgia courts follow the rule of *lex loci delicitus* in determining which state's law to apply in tort actions. *See*, *e.g.*, *Sargent Indus. v. Delta Air Lines*, 251 Ga. 91 (1982); *Wardell v. Richmond Screw Anchor Co.*, 133 Ga. App. 378, 390 (1974). While courts sometimes view the place of publication as the location

44

of the tort, *see Triguero v. ABN AMRO Bank N.V.*, 273 Ga. App. 92, 95 (2005), where publication occurs simultaneously in several states, courts will consider the "most significant relationship" test, which generally points to the plaintiff's domicile. *See*, *e.g.*, *Ramsey v. Fox News Network, L.L.C.*, 351 F. Supp. 2d 1145 (D. Colo. 2005) (applying Georgia law and noting that "place of the wrong" in defamation is usually "where the defamatory statement is communicated" but noting that in multistate defamation case Georgia would apply "most significant relationship" test); Restatement (Second) Conflict of Laws § 150.

Here, Plaintiffs allege that Defendants disseminated their statements to "the news media, both print and electronic, and both national and local." *See* Cmplt., ¶¶ 20, 28 ("Said statements were distributed on the *World Wide Web* and by most, if not all of the national news media."); ¶ 29 ("Specifically, the statements made on May 15, 2006 appeared in the *Atlanta Journal Constitution* on or about May 18, 2006."). Thus, the court finds that under these circumstances, Georgia would apply the law of Plaintiffs' domicile – Georgia – to Plaintiffs' defamation claims. As discussed above, Georgia grants conditional and not absolute privilege to statements made in the performance of a public duty. Therefore, Defendants' claim of privilege as public officials acting in the course of their duties cannot be resolved on a motion to dismiss.

Finally, Defendants contend that their statements are non-actionable statements of opinion. In *Gast v. Brittain*, 277 Ga. 340 (2003), the plaintiff, who was a Boy Scout leader,

filed a libel claim against a former youth group leader who circulated a letter of resignation in which he referred to the plaintiff as immoral and not living his life according to the "ideals of Scouting." The defendant moved for summary judgment arguing that those statements were non-actionable opinion. The trial court granted summary judgment on this basis, but the court of appeals reversed. In its opinion, the Supreme Court of Georgia first set out that

> the expression of opinion on matters with respect to which reasonable men might entertain differing opinions is not libelous . . . . An assertion that cannot be proved false cannot be held libelous. A writer cannot be sued for simply expressing his opinion of another person, however unreasonable the opinion or vituperous the expressing of it might be.

*Id.* at 341 (quoting *Bergen v. Martindale-Hubbell*, 176 Ga. App. 745, 747 (1985)). The Court then held that the youth's assertions of "immorality" and the "ideals of Scouting" are "plainly the sorts of opinions that are incapable of being proved false." *Id.* (citing *Webster v. Wilkins*, 217 Ga. App. 194, 195 (1995) (statement that plaintiff was "unfit to have a kid" not defamatory because it is incapable of being proved false); *Collins v. Cox Enterprises*, 215 Ga. App. 679, 680 (1994) (statement that candidate was trying to fool voters by changing his name "does not imply an assertion of objective fact that might be proved false"); *Blomberg v. Cox Enterprises*, 228 Ga. App. 178, 180 (1997) (statement that plaintiff was a "silvered tongue devil" not defamatory because incapable of being objectively proved false)).

46

The Court recognized, however, that there is no "wholesale defamation exception for anything that might be labeled opinion." *Id.* (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990)). "An opinion can constitute actionable defamation if the opinion can reasonably be interpreted, according to the context of the entire writing in which the opinion appears, to state or imply defamatory facts about the plaintiff that are capable of being proved false." *Id.* In *Atlanta Humane Society v. Mills*, 274 Ga. App. 159 (2005), the court applied *Gast* in holding that statements that a person was "evil" or "worthy" to lick excrement from shoes, or referring to him as "Mr. Kill" were "obviously exaggerated and unprovable assertions." *Id.* at 166.

Here, the court finds that the following statements are non-actionable opinion because they are incapable of being proved false:

- ". . . these dealers are the worst of the worst";

- "a scourge on our society";

- "targeting 15 specific irresponsible gun dealers";

- ". . . sent a loud and clear message to rogue dealers . . .";

- " . . . immoral and corrupt dealers . . ."; and

- " . . . small band of rogue dealers . . . ."

Clearly, however, the statements that allege criminal wrongdoing by Adventure Outdoors are capable of being proved false. *See Gast*, 277 Ga. at 341 (distinguishing non-

47

actionable statements because the allegations of "specific criminal conduct" were directed at another individual); *Cox Enterprises v. Nix*, 274 Ga. 801, 803 (2002) (distinguishing non-actionable statements made about the plaintiff because they were "set apart from any reference to lawyers accused of criminal conduct" and their interpretation "does not include a statement, implication, or suggestion that [the plaintiff] was engaged in criminal conduct"). Because it is possible to prove false an allegation that Adventure Outdoors broke the law, the court finds that the following statements fall into that category and are actionable (with the operative language emphasized):

- "– and most are sold by a small [group] of rogue gun dealers ***who refuse to obey federal laws.***"

- "***caught them . . . breaking the Federal laws regulating gun Sales***."

- "group of bad apples ***who routinely ignore federal regulations***."

- "***stop your illegal conduct*** or you too will face this kind of penalty"; and

- " . . . holding gun dealers ***who break the law*** accountable . . . ."

   Finally, the court finds that the statements

- "Plain and simple these dealers have New Yorkers' blood on their Hands" and

- " . . . lost their lives . . . as a result of this deadly commerce.  . . .  these dealers are . . . careless . . . reckless"

48

"could reasonably be interpreted to state or imply . . . defamatory facts" about Plaintiffs "that are capable of being proved false" and are, thus, also actionable.  *See Gast*, 277 Ga. at 341.  That is, Defendants asserted that Adventure Outdoors had "the blood of New Yorkers on their hands" because they sold guns in an illegal manner.  Similarly, the assertion of "deadly commerce" and "careless and reckless" dealers implies that Adventure Outdoors was not following the law in the running of their business.  For the foregoing reasons, the court GRANTS IN PART AND DENIES IN PART Defendants' motion to dismiss as to Plaintiffs' defamation claims.

### C.    Transfer to the Eastern District of New York

Finally, Defendants ask the court to transfer this action to the Eastern District of New York pursuant to the "first filed" rule, 28 U.S.C. § 1631, or 28 U.S.C. § 1404(a).  "Where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule."  *See Manual v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982) ("In [the] absence of compelling circumstances, the court initially seized of a controversy should be the one to decide the case.").  There must, however, be substantial overlap between the two cases in parties and claims.  *See*, *e.g.*, *In re Cuyahoga Equipment, Corp.*, 980 F.2d 110 (2d Cir. 1992) (rule applies "when identical or substantially

49

similar parties and claims are present in both courts"); *Mann Manufacturing, Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971) (applying first filed rule where "the likelihood of substantial overlap between the two suits had been demonstrated").

Here, the New York lawsuit raises causes of action of public nuisance, statutory nuisance, negligence *per se*, negligence, and negligent entrustment.  It seeks an injunction ordering *inter alia* "each Defendant to comply with federal, state and local laws related to the sale of guns, including ceasing to engage in straw sales."  The New York lawsuit, thus, addresses Adventure Outdoors' alleged negligence in permitting straw purchases to take place in its gun shop, thereby allowing guns possessed by criminals to feed into the New York market.

Plaintiffs' suit in Georgia raises causes of action of libel and slander, negligence and gross negligence, perhaps tortious interference, aiding and abetting, and special violations. Plaintiffs' suit surrounds the propriety of New York Defendants' sending private investigators into Georgia to simulate straw purchases at Georgia gun shops.  Plaintiffs also contend that the New York Defendants defamed them in press releases and conferences detailing the sales activities.  The only issue that could possibly substantially overlap is what happened during the actual gun sale in the Adventure Outdoors store.  The court finds that this overlap is not sufficient to invoke the first-filed rule, particularly where Plaintiffs allege

50

that they have been defamed and the effects of that defamation are being felt by Plaintiffs in the Georgia forum.

Furthermore, a reading of section 1631 suggests that it applies only to cases originally filed in federal court and thus would not be a basis for transferring this lawsuit which was originally filed in state court. *See* 28 U.S.C. § 610 ("the word 'courts' includes the courts of appeals and the district courts of the United States").

Finally, a court may transfer venue of a case for "the convenience of parties and witnesses [or] in the interests of justice." 28 U.S.C. § 1404(a). The plaintiff's choice of forum, however, should not be disturbed "unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996). Those other considerations include convenience of the witnesses, parties, and the interests of justice. *See Electronic Transaction Network v. Katz*, 734 F. Supp. 492, 501-02 (N.D. Ga. 1989) (Forrester, J.). When granting such a motion would "merely shift inconvenience from defendants to plaintiff," transferring venue is not appropriate. *Robinson*, 74 F.3d at 260. Defendants have proffered no reason why the Eastern District of New York would be more convenient for the witnesses or the parties. The witnesses would include the plaintiffs, employees of Adventure Outdoors, and private investigators sent into Adventure Outdoors, all Georgia residents. While it is true that other Defendants are New York residents, the court finds that a transfer to New York would merely shift the inconvenience from

51

Defendants to Plaintiffs. Therefore, the court declines to transfer this case pursuant to § 1404(a).

## III.   Conclusion

The court DENIES Plaintiffs' motion to remand [3-1]; GRANTS Defendants' motion for leave to file excess pages [6-1]; GRANTS IN PART AND DENIES IN PART Defendants' motion to dismiss [7-1] or in the alternative to transfer case to the United States District Court for the Eastern District of New York [7-2]; DENIES AS MOOT Plaintiffs' renewed motion to remand [13-1]; DENIES AS MOOT Plaintiffs' motion to amend complaint [14-1]; and GRANTS Plaintiffs' motion to amend complaint [18-1].

Defendants are DIRECTED to ANSWER Plaintiffs' complaint within thirty (30) days.

**IT IS SO ORDERED** this 20th day of September 2007.


_____ s/ J. Owen Forrester _____
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

52